**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

```
-----------------------------x
                             :
ESTELA BAUTISTA              :    Civ. No. 3:18CV01247(SALM)
                             :
v.                           :
                             :
NANCY A. BERRYHILL,          :    April 15, 2019
ACTING COMMISSIONER, SOCIAL  :
SECURITY ADMINISTRATION      :
                             :
-----------------------------x
```

<u>**RULING ON CROSS MOTIONS**</u>

Plaintiff Estela Bautista ("plaintiff"), brings this appeal under §205(g) of the Social Security Act (the "Act"), as amended, 42 U.S.C. §405(g), seeking review of a final decision by the Commissioner of the Social Security Administration (the "Commissioner" or "defendant") denying her applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") for the period of August 31, 2014, through May 22, 2017, and granting her applications for benefits from May 23, 2017, forward. Plaintiff has moved for an order reversing that portion of the Commissioner's decision denying her benefits. [Doc. #18]. Defendant has filed a cross-motion seeking an order affirming the decision of the Commissioner. [Doc. #20].

For the reasons set forth below, plaintiff's Motion for Order Reversing the Commissioner's Decision **[Doc. #18]** is

**DENIED**, and defendant's Motion for an Order Affirming the

Decision of the Commissioner **[Doc. #20]** is **GRANTED**.

I.    <u>**PROCEDURAL HISTORY**</u>[1]

Plaintiff filed concurrent applications for DIB and SSI on

November 25, 2014, alleging disability beginning March 14, 2012.[2]

<u>See</u> Certified Transcript of the Administrative Record, Doc. #12,

compiled on August 29, 2018, (hereinafter "Tr.") at 232-42.

Plaintiff's applications were denied initially on August 11,

2015, <u>see</u> Tr. 143-52, and upon reconsideration on January 21,

2016. <u>See</u> Tr. 156-63.

On May 10, 2017, plaintiff, represented by Attorney Gary

Huebner, appeared and testified at a hearing before

Administrative Law Judge ("ALJ") Martha Bower. <u>See generally</u> Tr.

40-63.[3] Vocational Expert ("VE") Larry Takki also appeared and

testified at the administrative hearing. <u>See</u> Tr. 48-49; Tr. 57-

62; <u>see also</u> Tr. 400-01. On June 15, 2017, the ALJ issued a

---

[1] Plaintiff filed a Stipulation of Facts with her motion and
supporting memorandum. <u>See</u> Doc. #18-2.

[2] Plaintiff appears to have later amended her alleged onset date
to August 31, 2014. <u>See, e.g.</u>, Tr. 78-79; Tr. 108-09; Tr. 275.

[3] Plaintiff appeared by teleconference for a prior administrative
hearing before ALJ Bower on December 20, 2016. <u>See</u> Tr. 68-76.
Plaintiff was self-represented at that hearing. <u>See</u> Tr. 70. ALJ
Bower adjourned that hearing so that she could review
documentation plaintiff had brought to the hearing which was not
part of the record. <u>See</u> Tr. 75-76.

partially favorable decision, finding that plaintiff became disabled within the meaning of the law as of May 23, 2017. <u>See</u> Tr. 17-39. On May 24, 2018, the Appeals Council denied plaintiff's request for review of that portion of the ALJ's decision denying her benefits, thereby making the ALJ's June 15, 2017, decision the final decision of the Commissioner. <u>See</u> Tr. 4-11. The case is now ripe for review under 42 U.S.C. §405(g).

Plaintiff timely filed this action for review and now moves to reverse the portion of the Commissioner's decision denying her applications for DIB and SSI for the period of August 31, 2014, through May 22, 2017. [Doc. #18]. On appeal, plaintiff argues:

1. The ALJ failed to evaluate permanent restrictions assessed by Dr. Abella;

2. The ALJ failed to properly weigh the opinion of Dr. Baleswaren; and

3. The ALJ improperly relied on the opinions of the state reviewing, non-examining physicians.[4]

<u>See generally</u> Doc. #18-1 at 3-7. For the reasons stated below, the Court finds that ALJ Bower did not err as contended, and that her decision is supported by substantial evidence.

---

[4] The Court has reordered the sequence in which the arguments appear in plaintiff's brief.

## II.  **STANDARD OF REVIEW**

The review of a Social Security disability determination involves two levels of inquiry. First, the Court must decide whether the Commissioner applied the correct legal principles in making the determination. Second, the Court must decide whether the determination is supported by substantial evidence. See Balsamo v. Chater, 142 F.3d 75, 79 (2d Cir. 1998) (citation omitted). Substantial evidence is evidence that a reasonable mind would accept as adequate to support a conclusion; it is more than a "mere scintilla." Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)). The reviewing court's responsibility is to ensure that a claim has been fairly evaluated by the ALJ. See Grey v. Heckler, 721 F.2d 41, 46 (2d Cir. 1983) (citation omitted).

The Court does not reach the second stage of review – evaluating whether substantial evidence supports the ALJ's conclusion – if the Court determines that the ALJ failed to apply the law correctly. See Norman v. Astrue, 912 F. Supp. 2d 33, 70 (S.D.N.Y. 2012) ("The Court first reviews the Commissioner's decision for compliance with the correct legal standards; only then does it determine whether the Commissioner's conclusions were supported by substantial

evidence." (citing <u>Tejada v. Apfel</u>, 167 F.3d 770, 773-74 (2d Cir. 1999))). "Where there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to the correct legal principles." <u>Johnson v. Bowen</u>, 817 F.2d 983, 986 (2d Cir. 1987).

"[T]he crucial factors in any determination must be set forth with sufficient specificity to enable [a reviewing court] to decide whether the determination is supported by substantial evidence." <u>Ferraris v. Heckler</u>, 728 F.2d 582, 587 (2d Cir. 1984) (alterations added) (citing <u>Treadwell v. Schweiker</u>, 698 F.2d 137, 142 (2d Cir. 1983)). The ALJ is free to accept or reject the testimony of any witness, but a "finding that the witness is not credible must nevertheless be set forth with sufficient specificity to permit intelligible plenary review of the record." <u>Williams ex rel. Williams v. Bowen</u>, 859 F.2d 255, 260-61 (2d Cir. 1988) (citing <u>Carroll v. Sec. Health and Human Servs.</u>, 705 F.2d 638, 643 (2d Cir. 1983)). "Moreover, when a finding is potentially dispositive on the issue of disability, there must be enough discussion to enable a reviewing court to determine whether substantial evidence exists to support that

finding." <u>Johnston v. Colvin</u>, No. 3:13CV00073(JCH), 2014 WL 1304715, at *6 (D. Conn. Mar. 31, 2014) (citing <u>Peoples v. Shalala</u>, No. 92CV4113, 1994 WL 621922, at *4 (N.D. Ill. Nov. 4, 1994)).

It is important to note that in reviewing the ALJ's decision, this Court's role is not to start from scratch. "In reviewing a final decision of the SSA, this Court is limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard." <u>Talavera v. Astrue</u>, 697 F.3d 145, 151 (2d Cir. 2012) (quoting <u>Lamay v. Comm'r of Soc. Sec.</u>, 562 F.3d 503, 507 (2d Cir. 2009)). **"[W]hether there is substantial evidence supporting the appellant's view is not the question here; rather, we must decide whether substantial evidence supports <u>the ALJ's decision</u>**." <u>Bonet ex rel. T.B. v. Colvin</u>, 523 F. App'x 58, 59 (2d Cir. 2013) (summary order) (citations omitted).

Finally, some of the Regulations cited in this decision, particularly those applicable to the review of medical source evidence, were amended effective March 27, 2017. Those "new regulations apply only to claims filed on or after March 27, 2017." <u>Smith v. Comm'r</u>, 731 F. App'x 28, 30 n.1 (2d Cir. 2018) (summary order). Where a plaintiff's claim for benefits was filed prior to March 27, 2017, "the Court reviews the ALJ's

decision under the earlier regulations[.]" <u>Rodriguez v. Colvin</u>, No. 3:15CV1723(DFM), 2018 WL 4204436, at \*4 n.6 (D. Conn. Sept. 4, 2018); <u>White v. Comm'r</u>, No. 17CV4524(JS), 2018 WL 4783974, at \*4 (E.D.N.Y. Sept. 30, 2018) ("While the Act was amended effective March 27, 2017, the Court reviews the ALJ's decision under the earlier regulations because the Plaintiff's application was filed before the new regulations went into effect." (citation omitted)).

### III. <u>SSA LEGAL STANDARD</u>

Under the Social Security Act, every individual who is under a disability is entitled to disability insurance benefits. 42 U.S.C. §423(a)(1).

To be considered disabled under the Act and therefore entitled to benefits, plaintiff must demonstrate that she is unable to work after a date specified "by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §423(d)(1)(A). Such impairment or impairments must be "of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C.

§423(d)(2)(A); 20 C.F.R. §§404.1520(c), 416.920(c) (requiring

that the impairment "significantly limit[] ... physical or

mental ability to do basic work activities" to be considered

"severe" (alterations added)).

There is a familiar five-step analysis used to determine if

a person is disabled. See 20 C.F.R. §§404.1520, 416.920. In the

Second Circuit, the test is described as follows:

> First, the Secretary considers whether the claimant is
> currently engaged in substantial gainful activity. If he
> is not, the Secretary next considers whether the
> claimant has a "severe impairment" which significantly
> limits his physical or mental ability to do basic work
> activities. If the claimant suffers such an impairment,
> the third inquiry is whether, based solely on medical
> evidence, the claimant has an impairment which is listed
> in Appendix 1 of the regulations. If the claimant has
> such an impairment, the Secretary will consider him
> disabled without considering vocational factors such as
> age, education, and work experience; the Secretary
> presumes that a claimant who is afflicted with a "listed"
> impairment is unable to perform substantial gainful
> activity.

Berry v. Schweiker, 675 F.2d 464, 467 (2d Cir. 1982) (per

curiam). If and only if the claimant does not have a listed

impairment, the Commissioner engages in the fourth and fifth

steps:

> Assuming the claimant does not have a listed impairment,
> the fourth inquiry is whether, despite the claimant's
> severe impairment, he has the residual functional
> capacity to perform his past work. Finally, if the
> claimant is unable to perform his past work, the
> Secretary then determines whether there is other work
> which the claimant could perform. Under the cases
> previously discussed, the claimant bears the burden of

proof as to the first four steps, while the Secretary must prove the final one.

Id.

"Through the fourth step, the claimant carries the burdens of production and persuasion, but if the analysis proceeds to the fifth step, there is a limited shift in the burden of proof and the Commissioner is obligated to demonstrate that jobs exist in the national or local economies that the claimant can perform given [her] residual functional capacity." Gonzalez ex rel. Guzman v. Dep't of Health and Human Serv., 360 F. App'x 240, 243 (2d Cir. 2010) (alteration added) (citing 68 Fed. Reg. 51155 (Aug. 26, 2003)); Poupore v. Astrue, 566 F.3d 303, 306 (2d Cir. 2009) (per curiam)). The Residual Functional Capacity ("RFC") is what a person is still capable of doing despite limitations resulting from her physical and mental impairments. See 20 C.F.R. §§404.1545(a)(1), 416.945(a)(1).

"In assessing disability, factors to be considered are (1) the objective medical facts; (2) diagnoses or medical opinions based on such facts; (3) subjective evidence of pain or disability testified to by the claimant or others; and (4) the claimant's educational background, age, and work experience." Bastien v. Califano, 572 F.2d 908, 912 (2d Cir. 1978). "[E]ligibility for benefits is to be determined in light of the fact that 'the Social Security Act is a remedial statute to be

broadly construed and liberally applied.'" Id. (quoting Haberman
v. Finch, 418 F.2d 664, 667 (2d Cir. 1969)).

## IV.  **THE ALJ'S DECISION**

Following the above-described five-step evaluation process,
ALJ Bower concluded that plaintiff "was not disabled prior to
May 23, 2017, but became disabled on that date and has continued
to be disabled through the date" of her decision. Tr. 22; see
also Tr. 31. At step one, the ALJ found that plaintiff had not
engaged in substantial gainful activity since the alleged onset
date of August 31, 2014. See Tr. 24. At step two, the ALJ found:
"Since the alleged onset date of disability, August 31, 2014,
the claimant has had the following severe impairments: obesity
with back pain, depression, and anxiety[.]" Id. The ALJ found
plaintiff's closed toe fracture of her right fifth toe and
esophagitis to be non-severe impairments. See id.

At step three, the ALJ found that plaintiff's impairments,
either alone or in combination, did not meet or medically equal
the severity of any of the listed impairments in 20 C.F.R. § Pt.
404, Subpt. P, App. 1. See Tr. 24-25. The ALJ specifically
considered Listings 1.04 (disorders of the spine), 12.04
(affective disorders), and 12.06 (anxiety related disorders) in
making that determination. See id. Before moving on to step

four, the ALJ determined that since August 31, 2014, plaintiff

had the RFC

> to perform light work as defined in 20 CFR 404.1567(b)
> and 416.967(b) except she can occasionally climb stairs
> and ramps, balance, stoop, kneel, crouch, and crawl. She
> can never climb ladders, ropes, or scaffolds. She has
> limitation in concentration, persistence, or pace with
> the ability to understand, remember, and carry out
> simple tasks of a routine and repetitive nature. She is
> limited to object oriented tasks with only occasional
> superficial work related interactions with the general
> public.

Tr. 25. The ALJ found: "Prior to the established disability

onset date, the claimant was an individual closely approaching

advanced age. On May 23, 2017, the claimant's age category

changed to an individual of advanced age[.]" Tr. 30. At step

four, the ALJ determined: "Prior to May 23, 2017,

transferability of job skills is not material to the

determination of disability[.] ... Beginning on May 23, 2017,

the claimant has not been able to transfer job skills to other

occupations[.]" Id. At step five, the ALJ found that prior to

May 23, 2017, and after considering plaintiff's age, education,

work experience and RFC, as well the testimony of the VE, other

jobs existed in significant numbers in the national economy that

plaintiff could perform. See Tr. 30-31. The ALJ then determined:

"Beginning on May 23, 2017, the date the claimant's age category

changed; considering the claimant's age, education, work

experience, and residual functional capacity, there are no jobs

that exist in significant numbers in the national economy that the claimant could perform[.]" Tr. 31.

## V.   **DISCUSSION**

Plaintiff raises several arguments in support of reversal, each of which relates to the treating physician rule. The Court addresses each in turn.

### A.   Applicable Law

> "The SSA recognizes a 'treating physician' rule of deference to the views of the physician who has engaged in the primary treatment of the claimant," Green-Younger, 335 F.3d at 106. According to this rule, the opinion of a claimant's treating physician as to the nature and severity of the impairment is given "controlling weight" so long as it "is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the case record." 20 C.F.R. §404.1527(d)(2); see, e.g., Green-Younger, 335 F.3d at 106; Shaw, 221 F.3d at 134.

Burgess v. Astrue, 537 F.3d 117, 128 (2d Cir. 2008); see also 20 C.F.R. §§404.1527(c), 416.927(c). If the opinion, however, is not "well-supported" by "medically acceptable" clinical and laboratory diagnostic techniques, then the opinion cannot be entitled to controlling weight. 20 C.F.R. §§404.1527(c)(2), 416.927(c)(2).

When weighing any medical opinion, treating or otherwise, the Regulations require that the ALJ consider the following factors: length of treatment relationship; frequency of examination; nature and extent of the treatment relationship;

relevant evidence used to support the opinion; consistency of the opinion with the entire record; and the expertise and specialized knowledge of the treating source. See 20 C.F.R. §§404.1527(c)(2)-(6), 416.927(c)(2)-(6); Social Security Ruling ("SSR") 96-2P, 1996 WL 374188, at *2 (S.S.A. July 2, 1996); SSR 06-03P, 2006 WL 2329939, at *3-4 (S.S.A. Aug. 9, 2006). The Second Circuit does not, however, require a "slavish recitation of each and every factor [of 20 C.F.R. §§404.1527(c), 416.927(c)] where the ALJ's reasoning and adherence to the regulation are clear." Atwater v. Astrue, 512 F. App'x 67, 70 (2d Cir. 2013) (citing Halloran v. Barnhart, 362 F.3d 28, 31-32 (2d Cir. 2004) (per curiam)).

     B.   Dr. Abella's 2012 Opinion

          *1. Failure to Discuss 2012 Opinion of Dr. Abella, Generally*

Plaintiff asserts that the ALJ erred by failing to discuss a work restriction form completed by Dr. Gabriel Abella and dated November 7, 2012, which assessed certain permanent restrictions on plaintiff's ability to return to work full-time (hereinafter the "Dr. Abella opinion"). See Doc. #18-1 at 3; see also Tr. 1019. Plaintiff contends that Dr. Abella's treatment relationship began with plaintiff in 2007 and continued through May 2013, and that "[u]nlike the non-examining State agency consultants, Dr. Abella had the benefit of reviewing the only

cervical and lumbar spine MRIs in the record." Id. at 3-4
(citing Tr. 1009-12). Defendant responds that: (1) Dr. Abella's
opinion, which was authored in 2012, predates the relevant time
period by almost two years and therefore is of limited probative
value; and (2) Dr. Abella's opinion is largely consistent with
the ALJ's RFC determination. See Doc. #20-1 at 9-10.

On November 7, 2012, in connection with plaintiff's
worker's compensation claim, Dr. Abella completed a work
restriction form addressing plaintiff's ability to return to
work on a full-time basis. See Tr. 1019. Dr. Abella opined that
the restrictions assessed were "permanent from neck + back
injury only[.]" Id. Dr. Abella opined that plaintiff could
return to full-time work with the following restrictions:
stand/walk for half an hour at a time for a total of eight hours
per day; sit for half an hour at a time for a total of eight
hours per day; and drive for half an hour at a time for a total
of eight hours per day. See id. Dr. Abella found plaintiff could
lift five pounds frequently, and fifteen pounds occasionally.
See id. As to postural limitations, Dr. Abella determined that
plaintiff could occasionally bend, squat, kneel, use stairs,
reach, and twist, but could never crawl, climb ladders, or be in
confined spaces. See id. Dr. Abella also opined that plaintiff
should be permitted to "re-position as needed, sit & stand." Id.

The Social Security Administration "will consider all
evidence in [a claimant's] case record when [it] makes a
determination or decision whether [a claimant] is disabled." 20
C.F.R. §§404.1520(a)(3), 416.920(a)(3). Although the ALJ did not
discuss Dr. Abella's 2012 opinion in her decision, the record
supports a reasonable inference that the opinion was at least
considered. The ALJ's decision states that she made her
determination "[a]fter a careful consideration of all the
evidence[.]" Tr. 22; see also Tr. 25 (noting the RFC
determination was rendered "based on all the evidence"); see
also Tr. 29 (same). The record before the ALJ included Dr.
Abella's opinion. See Tr. 39 (list of exhibits). Indeed, the
evidence encompassing that opinion was specifically brought to
the ALJ's attention at the administrative hearing. See Tr. 44-
45. In light of the foregoing, "[t]he court concludes that the
ALJ's statement [that she reached her decision based on all the
evidence] was sufficient to establish that the ALJ considered
[Dr. Abella's opinion], even though she did not address it."
McKinstry v. Astrue, No. 5:10CV319(CR), 2012 WL 619112, at *5
(D. Vt. Feb. 23, 2012), aff'd, 511 F. App'x 110 (2d Cir. 2013).
Indeed, it is well established in this Circuit that "[a]n ALJ's
failure to cite specific evidence does not indicate that such

evidence was not considered." Brault v. Soc. Sec. Admin., Comm'r, 683 F.3d 443, 448 (2d Cir. 2012) (citation omitted).

Although the Court concludes that the ALJ considered Dr. Abella's opinion, the Court next addresses whether the ALJ's failure to explicitly discuss Dr. Abella's opinion constitutes reversible error. The Regulations dictate: "Regardless of its source, we will evaluate every medical opinion we receive." 20 C.F.R. §§404.1527(c), 416.927(c). Here, the ALJ's failure to discuss or otherwise evaluate Dr. Abella's opinion was error. See, e.g., Lewis v. Colvin, No. 1:14CV794(MAT), 2017 WL 2703656, at *2 (W.D.N.Y. June 23, 2017) ("In this case, the ALJ failed to even discuss Dr. Reynolds' opinion; moreover, the ALJ failed to weigh other psychological opinion evidence in the record[.] ... The ALJ erred in failing to weigh these opinions and, as plaintiff argues, in failing to even discuss Dr. Reynolds' opinion." (footnote omitted)).

"Such an error ordinarily requires remand to the ALJ[.]" Zabala v. Astrue, 595 F.3d 402, 409 (2d Cir. 2010). However, the "failure to address [certain opinion evidence] is harmless error if consideration of the evidence would not have changed the ALJ's ultimate conclusion." McKinstry, 2012 WL 619112, at *5. Indeed, "[r]emand is unnecessary[] ... where application of the correct legal standard could lead to only one conclusion. Where

application of the correct legal principles to the record could lead only to the same conclusion, there is no need to require agency reconsideration." Zabala, 595 F.3d at 409 (internal citation and quotation marks omitted); accord Johnson v. Berryhill, No. 3:17CV1255(MPS), 2018 WL 6381096, at *3 (D. Conn. Dec. 6, 2018) ("Even where ALJ misapplies the treating physician rule, I need not remand where the correct application of the correct legal principles would lead to the same result.").

The ALJ's failure to address Dr. Abella's opinion was harmless error for several reasons. First, the opinion pre-dates the alleged onset date by over two years. See Tr. 1019. Although the restrictions assessed in that form are purportedly "permanent," after that opinion was rendered, plaintiff returned to work as a home health aide, where her work exceeded the restrictions provided by Dr. Abella. See Tr. 288 (Work History Report indicating plaintiff worked as a home health aide until March 2014); Tr. 299-300, Tr. 306 (Work Activity Report); Tr. 290 (As a home health aide, plaintiff frequently lifted 100 pounds or more.). Second, the ALJ explicitly considered three opinions of plaintiff's treating primary care physician, Dr. Baleswaren, which are much more favorable to plaintiff than the opinion of Dr. Abella. See Tr. 29 (ALJ's discussion of Dr. Baleswaren's opinions); see also Tr. 563, Tr. 591, Tr. 971-76

(Dr. Baleswaren's opinions). <u>Third</u>, to the extent Dr. Abella was

the only physician to have reviewed the cervical and lumbar

spinal MRIs of record, <u>see</u> Doc. #18-1 at 4, Dr. Abella's

treatment notes indicated that such diagnostic imaging was

largely unremarkable. Dr. Abella's July 9, 2012, treatment note

stated:

> C-spine MRI images from Groton Open MRI dated 7/2/12 is
> reviewed with the patient. Overall this is a normal
> study. There is some slight straightening of the upper
> cervical lordosis, but otherwise there is no focal disc
> protrusion, no evidence of stenosis or disc herniation
> at any level.
>
> Lumbar spine open MRI images are again reviewed from
> Groton dated 7/2/12. Again, this is a fairly benign
> study. At L4-5 there is perhaps some slight disc
> desiccation and minimal bulging. There is no evidence of
> any nerve compression at this level or any other level.

Tr. 1005 (sic); <u>see also</u> Tr. 1009 (July 2, 2012, lumbar spine

MRI); Tr. 1010 (July 2, 2012, cervical spine MRI). Similarly,

Dr. Abella's October 15, 2012, treatment note stated that

plaintiff's "cervical MR images are benign as well as her lumbar

spine imaging." Tr. 1002. In light of the foregoing, and the

other evidence of record discussed throughout this decision,

there is no reasonable likelihood that the ALJ's explicit

consideration and discussion of Dr. Abella's opinion would have

changed the ALJ's determination that plaintiff was capable of

performing light work during the relevant time period.

Accordingly, "[b]ecause the report that the ALJ overlooked was

not significantly more favorable to" plaintiff, there is "no reasonable likelihood that her consideration of [Dr. Abella's] report would have changed the ALJ's determination that [plaintiff] was not disabled during the closed period. Accordingly, remand for consideration of [Dr. Abella's opinion] is unnecessary." Zabala, 595 F.3d at 410; accord McKinstry v. Astrue, 511 F. App'x 110, 111–12 (2d Cir. 2013); see also Johnson, 2018 WL 6381096, at *3 ("Even if the ALJ had properly applied the treating physician rule to the June 24, 2011 opinion, there is no reasonable likelihood that the ALJ would have reached a different conclusion given the voluminous record evidence supporting Johnson's residual functional capacity as laid out in the ALJ's RFC.").

> ### 2. Failure to Discuss the Sit and Stand Restrictions Found by Dr. Abella

Plaintiff also argues that the ALJ erred because she failed to assess the "sit and stand" restrictions found by Dr. Abella. See Doc. #18-1 at 5. Defendant responds that "even if Plaintiff required such a limitation, she would still be able to perform the bench assembly position identified by the VE[,]" and therefore, "remand is not warranted on this basis." Doc. #20-1 at 10.

In support of her argument, plaintiff contends that "[r]elevant case law holds that an ALJ must specify the

frequency of the need to alternate position." Doc. #18-1 at 5.
In support of that statement, plaintiff relies on the case of
Palmer v. Berryhill, No. 17CV1714(RMS), 2018 WL 6304349 (D.
Conn. Dec. 3, 2018). Palmer, however, is distinguishable from
the facts of this case. In Palmer, the ALJ found that the
claimant was capable of sedentary work with certain other
postural and social limitations, including a four-hour
limitation for standing and walking during an eight-hour
workday. See id. at *1. Although the ALJ afforded "substantial
weight" to the opinion of the claimant's treating physician, the
ALJ "did not explain why he adopted some, but not all, of [the
treating physician's] restrictions[,]" including "that the
plaintiff is limited to no sitting or standing for more than one
hour without a change in position." Id. at *4 (record citation
and internal quotation marks omitted). The court observed that
"sedentary work allows for a change in position[,]" but
ultimately concluded:

> [I]t is important that the ALJ articulate the frequency
> of the change in position because, when the need to
> alternate position "cannot be accommodated by scheduled
> breaks and a lunch period, the occupational base for a
> full range of unskilled sedentary work will be
> eroded." Id. ... Accordingly, the Second Circuit has
> emphasized that, when an individual must alternate
> between sitting and standing, the ALJ's RFC assessment
> must specify the frequency of the need to alternate
> position. Gavazzi v. Berryhill, 687 F. App'x 98, 100 (2d
> Cir. 2017) (summary order). In such a case, the ALJ's
> RFC assessment "must be specific as to the frequency of

> the individual's need to alternate sitting and
> standing," SSR 96-9p, 1996 WL 374185, at *6-7, since the
> frequency of a claimant's need to alternate positions
> affects the range of work that the claimant can perform.

Palmer, 2018 WL 6304349, at *4. Thus, among other reasons, the

court determined that the ALJ committed reversible error where

he "did not specify the frequency of the plaintiff's need to

change positions[.]" Id.

The rationale in Palmer is not applicable to the

circumstances currently before this Court. Unlike the plaintiff

in Palmer, the plaintiff here was found capable of light work.

See Tr. 25. The Second Circuit case on which the Palmer decision

relies is also inapplicable because it, too, involved a

plaintiff who was restricted to sedentary, as opposed to light,

work. See Gravazzi, 687 F. App'x at 100.[5] Finally, the SSR also

relied on by the Palmer decision is entitled: "Policy

Interpretation Ruling Titles II and XVI: Determining Capability

to do Other Work – Implications of a Residual Functional

Capacity for less than a Full Range of Sedentary Work." SSR 96-

9P, 1196 WL 374185 (SSA July 2, 1996) (emphasis added).

---

[5] Although the Second Circuit's opinion does not explicitly state
that the ALJ limited plaintiff to sedentary work, the lower
court decision from which plaintiff appealed specifically noted
that the ALJ limited plaintiff to a "full range of sedentary
work." Gavazzi v. Colvin, No. 3:13CV834(FJS), 2016 WL 1275643,
at *1 (N.D.N.Y. Mar. 31, 2016), vacated and remanded sub
nom. Gavazzi, 687 F. App'x 98.

Accordingly, that policy interpretation is also not applicable to the facts of this case. Therefore, the Palmer decision is not persuasive given that the ALJ here determined that plaintiff retained the RFC to perform light, as opposed to sedentary, work. Thus, the occupational base for the light-exertion jobs identified by the VE was not necessarily eroded by the need for a sit/stand option as it would have been had the ALJ restricted plaintiff to sedentary work.

The Court is persuaded by defendant's argument that remand is not warranted on the ground that the ALJ failed to include the sit/stand restriction assessed by Dr. Abella. Assuming, without deciding, that the ALJ's failure to include a sit/stand option in the RFC determination was error, any such error would again be harmless. As defendant asserts, the VE testified that the table worker/visual inspector job identified can be performed with a sit/stand option. See Tr. 61-62. Other VEs in this Circuit have also testified that the same position provides for a sit/stand option. See, e.g., Brito v. Colvin, No. 13CV6501P, 2015 WL 1470555, at *17 (W.D.N.Y. Mar. 31, 2015) (VE testimony that job of table worker available with an option to sit and stand at will); Bonilla v. Colvin, No. 15CV3264(JG), 2015 WL 6143642, at *8 (E.D.N.Y. Oct. 19, 2015) (same). Accordingly, "[b]ecause plaintiff could perform [the] position

[of table worker] regardless of whether the ALJ had included a sit/stand  option in her RFC which would allow her to change positions at will, remand to consider that issue further would serve no useful purpose." Yeomas v. Berryhill, 305 F. Supp. 3d 464, 468 (W.D.N.Y. 2018).[6]

Thus, the ALJ's failure to address Dr. Abella's sit/stand restriction is not reversible error.

C.    Weight Afforded to Opinions of Dr. Baleswaren

Plaintiff contends that "[t]he ALJ did not properly weigh Dr. Baleswaren's opinion." Doc. #18-1 at 5. Specifically, plaintiff argues that the ALJ "failed to provide good reasons or cite to specific inconsistent evidence in the record to support her decision to accord little evidentiary weight to Dr. Baleswaren's opinion." Id. at 7.[7] Defendant responds that "the ALJ appropriately considered Dr. Baleswaren's very restrictive

---

[6] "The Commissioner need show only one job existing in the national economy that plaintiff can perform." Duprey v. Berryhill, No. 3:17CV00607(SALM), 2018 WL 1871451, at *12 (D. Conn. Apr. 19, 2018) (quoting Bavaro v. Astrue, 413 F. App'x 382, 384 (2d Cir. 2011)).

[7] Presumably, plaintiff takes issue with the weight afforded only to the March 31, 2017, opinion authored by Dr. Baleswaren. That opinion sets forth specific functional limitations regarding plaintiff's physical abilities. See Tr. 971-76. The record also contains two letters authored by Dr. Baleswaren, which do not contain such specific limitations, but generally opine that plaintiff is unable to work. See Tr. 563, Tr. 591. Accordingly, the Court addresses only the March 31, 2017, opinion.

medical source statement, and reasonably found that it conflicted with significant other evidence of record." Doc. #20-1 at 10.

With respect to the March 31, 2017, opinion of Dr. Baleswaren, the ALJ stated:

> In March 2017, Dr. Baleswaren completed another assessment, indicating the claimant was incapable of even sedentary work on an ongoing basis (Exhibit 33F). He reported the claimant could not lift any amount of weight at any frequency and could not engage in any postural activities, apart from occasional climbing of ramps and stairs.
>
> ... Dr. Baleswaren's sweeping limitations find little support in the longitudinal medical record. As discussed above, the most severe physical finding involves a meniscal tear and moderate degeneration in one knee. She is largely unaffected by objective abnormalities. There is nothing to suggest that she could not lift any amount of weight at any frequency. The claimant exhibits full motor strength with no evidence of such severe lifting restrictions. Dr. Baleswaren's findings appear almost entirely based on the claimant's subjective report. For the reasons discussed above, her subjective statements are inconsistent and largely unsupported by objective findings. Diagnostic imaging and physical examinations have failed to show any more than generally mild findings in any bodily area with the exception of her left knee. ... His treating source medical opinion is granted little evidentiary weight, as it is unsupported by objective findings and inconsistent with the longitudinal treatment record as a whole.

Tr. 29 (sic).

> ### 1. The ALJ's Consideration of Dr. Baleswaren's Treatment Relationship with Plaintiff

Plaintiff suggests that when the ALJ evaluated Dr. Baleswaren's opinion, she did not appropriately consider

plaintiff's treatment relationship with Dr. Baleswaren. See Doc. #18-1 at 5-6. Defendant does not respond to this aspect of plaintiff's argument, likely because it is not thoroughly developed.

Before addressing the weight she afforded to Dr. Baleswaren's opinion, the ALJ noted that Dr. Baleswaren is plaintiff's "primary care physician." Tr. 28. The ALJ also considered and relied on Dr. Baleswaren's treatment notes in her decision. See Tr. 26 (citing Exhibit 6F (Tr. 458-92), which contains 15 treatment notes of Dr. Baleswaren dating from March 19, 2014, through May 5, 2015); id. (citing Exhibit 32F (Tr. 808-969), which contains 48 treatment notes of Dr. Baleswaren dating from January 12, 2012, to December 15, 2016). The records considered and cited by the ALJ collectively demonstrate the length of Dr. Baleswaren's treatment relationship with plaintiff, the frequency with which she examined plaintiff, and the general nature and extent of the treatment relationship between Dr. Baleswaren and plaintiff. In that regard, the exhibits cited and summarized by the ALJ contain no less than 63 treatment records authored by Dr. Baleswaren, which span the time period of March 28, 2012, see Tr. 939-40, to December 15,

2016, see Tr. 828-29.[8] Accordingly, the Court finds from the ALJ's decision that she adequately considered the nature, length, and frequency of examination when weighing Dr. Baleswaren's opinion. See, e.g., Cichocki v. Astrue, 534 F. App'x 71, 76 (2d Cir. 2013) ("[R]emand is not required where 'the evidence of record permits us to glean the rationale of an ALJ's decision[.]'" (quoting Mongeur v. Heckler, 722 F.2d 1033, 1040 (2d Cir. 1983))); Daniel v. Berryhill, No. 3:17CV01015(SALM), 2018 WL 2128380, at *6 (D. Conn. May 9, 2018) (finding that the ALJ implicitly considered a treating physician's relationship with plaintiff where the ALJ "explicitly considered [the physician's] treatment notes throughout his decision[]").

> 2. *The ALJ's Consideration of the Objective Evidence*

Plaintiff next asserts that that ALJ's decision "does not explore whether these objective test results [the July 2, 2012, lumbar and cervical spine MRIs] are consistent with Dr. Baleswaren's opinion." Doc. #18-1 at 6. Plaintiff asserts that "the ALJ's failure to evaluate the spinal MRIs in evidence and

---

[8] Plaintiff notes that Dr. Baleswaren's last name was previously Pathman. See Doc. #18-1 at 5. Records from 2012 reflect Dr. Baleswaren's prior name. See Tr. 923-36, Tr. 939-40. It is unclear whether the ALJ knew of Dr. Baleswaren's prior name. Regardless, Dr. Baleswaren's current name appears in the record as early as May 20, 2013. See Tr. 917.

discuss whether they are consistent with Dr. Baleswaren's opinion falls short of the regulatory requirement to consider all the evidence in the record." Id. at 7. However, when evaluating Dr. Baleswaren's opinion, the ALJ specifically stated: "Diagnostic imaging and physical examinations have failed to show any more than generally mild findings in any bodily area with the exception of her left knee." Tr. 29. As previously noted, Dr. Abella described plaintiff's July 2, 2012, spinal MRI's as "normal" and "benign[.]" Tr. 1002, Tr. 1005. Accordingly, the ALJ did consider the objective evidence and determined that it did not support Dr. Baleswaren's restrictive opinion. Indeed, the ALJ gave Dr. Baleswaren's opinion "little evidentiary weight, as it is unsupported by objective findings[.]" Tr. 29. Accordingly, there is no error on that point.

### 3. Discounting the Opinion Because it was Based on Plaintiff's Subjective Report

Plaintiff next takes issue with the ALJ affording little weight to Dr. Baleswaren's opinion on the ground that "Dr. Baleswaren's findings appear almost entirely based on the claimant's subjective report[.]" Doc. #18-1 at 7 (quoting Tr. 29). Plaintiff asserts that "Dr. Baleswaren's treatment notes frequently contain detailed functional assessments and general

examination findings which serve to support her opinion[.]" Id.
(citing Tr. 817, Tr. 825, Tr. 834, Tr. 841).

An ALJ may properly discount a treating source's opinion
where it is based on plaintiff's subjective complaints, as
opposed to objective medical evidence. See Roma v. Astrue, 468
F. App'x 16, 19 (2d Cir. 2012) (ALJ properly discounted opinion
of treating physician when considering, amongst other
appropriate factors, that "the supportability of [the] opinion
was doubtful as it was based largely upon [plaintiff's]
subjective responses, which were not themselves entirely
credible for the reasons explained in the ALJ's decision."
(alterations added) (citing 20 C.F.R. §404.1527(d)(3)));
Polynice v. Colvin, 576 F. App'x 28, 31 (2d Cir. 2014) (ALJ did
not "improperly deny controlling weight to any treating
physician's medical opinion[,]" where much of that "'medical
opinion' was no more than a doctor's recording of [plaintiff's]
own reports of pain.").

Contrary to plaintiff's claim, the majority of Dr.
Baleswaren's treatment notes, including those relied on by
plaintiff, do not contain detailed functional assessments and
appear to rely on plaintiff's subjective complaints of pain. For
example, on November 16, 2016, plaintiff complained of back and
knee pain. See Tr. 817. Dr. Baleswaren performed a "General

Examination[,]" which included an examination of plaintiff's extremities ("left knee pain with palpation"), but failed to examine plaintiff's back. Id. Similarly, on September 15, 2016, plaintiff saw Dr. Baleswaren with complaints of back pain, neck pain, and knee pain. See Tr. 825. Again, Dr. Baleswaren performed a "General Examination[,]" which included an examination of plaintiff's extremities ("left knee brace in place. no edema pain with movement[]" (sic)), but failed to examine plaintiff's back or neck. Id. Nevertheless, Dr. Baleswaren assessed plaintiff with "[l]ow back pain at multiple sites[.]" Id. The other two treatment records relied on by plaintiff, see Tr. 834, Tr. 841, were authored not by Dr. Baleswaren, but by Hyun Suk Kim, a chiropractor with the Community Health Center. See id.

Many of Dr. Baleswaren's treatment notes contain summaries of plaintiff's subjective complaints with no examinations. See, e.g., Tr. 473 (Dr. Baleswaren assessed plaintiff with chronic pain syndrome based on plaintiff's complaints of neck pain, back pain, left shoulder pain, and left leg pain; no examination was performed.); Tr. 481 (Dr. Baleswaren assessed plaintiff with "Pain in Joint Shoulder Region" based on plaintiff's complaint; no examination of plaintiff's shoulder was performed.); Tr. 813 (Dr. Baleswaren assessed plaintiff with "Pain, joint, multiple

sites" based on plaintiff's complaints; no examination was performed.); Tr. 815 (Dr. Baleswaren assessed plaintiff with arthralgia based on plaintiff's complaint; no examination was performed.); Tr. 819 (Dr. Baleswaren assessed plaintiff with left knee pain based on plaintiff's complaint; no examination was performed.).

When Dr. Baleswaren did examine plaintiff, the results of those examinations were relatively mild to moderate. See, e.g., Tr. 459 ("Extremities: shoulder limited ROM due to pain."); Tr. 463 ("Back: spasm of paraspinals, upeerback midscapular area tenderness to palpation." (sic)); Tr. 475 ("Neck: tenderness on trapezius muscle, limited ROM. ... Back: spasm of lumbar paraspinals."); Tr. 838 ("Extremities: left knee tenderness toi palpation." (sic)); Tr. 881 ("Neck: supple, no lymphadenopathy. ... Back: spasm of lumbar paraspinals. Extremities: no clubbing, no edema, pulses 2 plus bilaterally.").

Other physical examinations of record also lack the type of severe findings which would support the limitations assigned by Dr. Baleswaren in her opinion. See, e.g., Tr. 499 (April 22, 2015, physical examination: "Gait normal, No neck tenderness, No back tenderness, Muscle strength normal, Joint range of motion normal" (sic)); Tr. 596 (October 16, 2016, physical examination: "Evaluation of the left knee reveals some mild swelling on the

superlateral aspect of the knee, but skin is intact. ... Good range of motion actively and passively."); Tr. 752 (August 5, 2016, physical examination: "Neck: Normal range of motion."); Tr. 793 (April 23, 2015: "On physical exam, the patient is in no acute distress."); Tr. 845 (April 20, 2016, examination: UE motor: 5/5 bilaterally[.] UE sensory: intact bilaterally to sharp and dull[.] ... LE motor: 5/5 bilaterally[.] LE sensory: intact to sharp and dull[.]"); see also Tr. 424 (plaintiff observed ambulating to triage with a steady gait at emergency department on February 16, 2015).

Additionally, the limitations set forth in Dr. Baleswaren's opinion itself are explicitly based on plaintiff's shoulder, neck, back, and knee pain. See Tr. 971-74. Dr. Baleswaren fails to set forth any objective clinical findings in support of the limitations assigned. See generally id. Indeed, in support of the hand limitations assessed, Dr. Baleswaren states: "[P]atient reports past diagnosis of carpal tunnel syndrome." Tr. 973.

Accordingly, the ALJ properly discounted Dr. Baleswaren's opinion because it "appear[ed] almost entirely based on the claimant's subjective report." Tr. 29.

> 4. *Failure to Cite Specific Inconsistent Evidence*

Plaintiff next asserts that "the ALJ was obligated to cite specific inconsistent evidence to support" the decision to

afford little weight to Dr. Baleswaren's opinion. Doc. #18-1 at 7. In fact, the ALJ did cite to inconsistent evidence to support her decision to afford little weight to Dr. Baleswaren's opinion. The ALJ stated:

> Dr. Baleswaren's sweeping limitations find little support in the longitudinal medical record. <u>As discussed above</u>, the most severe physical finding involves a meniscal tear and moderate degeneration of one knee. She is otherwise largely unaffected by objective abnormalities. There is nothing to suggest that she could not lift any amount of weight at any frequency. The claimant exhibits full motor strength with no evidence of such severe lifting restrictions.

Tr. 29 (emphasis added). Earlier in her decision, the ALJ summarized the evidence of record, including the "few significant objective abnormalities ... with generally mild to moderate findings on physical examination and diagnostic imaging[,]" and plaintiff "consistently retain[ing] full 5/5 motor strength in all upper and lower extremities (Exhibit 32F)." Tr. 26. Accordingly, plaintiff's argument is without merit.

Thus, for the reasons stated, the ALJ properly afforded little weight to Dr. Baleswaren's restrictive opinion and provided good reasons for doing so -- specifically, that it was unsupported by objective findings and inconsistent with the record as a whole. <u>See</u> Tr. 29; <u>see also</u> <u>Atwater</u>, 512 F. App'x at 70.

D.    <u>Reliance on State Reviewing, Non-Examining Physicians'</u>
      <u>Opinions</u>

Plaintiff asserts that the ALJ erroneously relied on the
opinions of the state reviewing, non-examining physicians, Dr.
Park and Dr. Wurzel, because their opinions were based on an
incomplete record. <u>See</u> Doc. #18-1 at 3, 5. Specifically,
plaintiff asserts that in forming their respective opinions, Dr.
Park and Dr. Wurzel did not have the benefit of reviewing the
records from Norwich Orthopedic Group (Exhibit 8F) or the July
2, 2012, MRIs of plaintiff's lumbar and cervical spine. <u>See</u> <u>id.</u>
at 3. Plaintiff also asserts that Dr. Park and Dr. Wurzel
rendered their opinions before reviewing the MRI reflecting a
tear in plaintiff's left meniscus. <u>See</u> <u>id.</u> at 5. Defendant
responds, <u>inter</u> <u>alia</u>, that although Dr. Park and Dr. Wurzel
provided their opinions in 2015, the ALJ appropriately relied on
those opinions because he considered them with the entire record
and found each to be consistent therewith. <u>See</u> Doc. #20-1 at 7-
8, 13.

Dr. Park and Dr. Wurzel opined that plaintiff could
occasionally lift twenty pounds, frequently lift ten pounds, sit
for a total of about six hours in an eight-hour workday, and
stand for a total of about six hours in an eight-hour workday.
<u>See</u> Tr. 85-86, Tr. 118-19. Each doctor also determined that
plaintiff was occasionally limited in her ability to engage in

postural activities. See Tr. 86, Tr. 118-19. With respect to these opinions, the ALJ stated:

> [A]lthough these opinions are from non-examining and non-treating expert sources, they are generally consistent with the medical evidence as a whole, and are accorded great evidentiary weight in determining the claimant's light residual functional capacity identified above.

Tr. 29.

"[T]he opinions even of non-examining sources may override treating sources' opinions and be given significant weight, so long as they are supported by sufficient medical evidence in the record." Correale-Englehart v. Astrue, 687 F. Supp. 2d 396, 427 (S.D.N.Y. 2010); see also Little v. Colvin, No. 5:14CV63(MAD), 2015 WL 1399586, at *9 (N.D.N.Y. Mar. 26, 2015) ("State agency physicians are qualified as experts in the evaluation of medical issues in disability claims. As such, their opinions may constitute substantial evidence if they are consistent with the record as a whole."). "[M]edical source opinions that are conclusory, stale, and based on an incomplete medical record may not be substantial evidence to support an ALJ finding." Camille v. Colvin, 104 F. Supp. 3d 329, 343 (W.D.N.Y. 2015) (citation and internal quotation marks omitted), aff'd, 652 F. App'x 25 (2d Cir. 2016). "However, a medical opinion is not necessarily stale simply based on its age. A more dated opinion may constitute substantial evidence if it is consistent with the

record as a whole notwithstanding its age." <u>Biro v. Comm'r of
Soc. Sec.</u>, No. 6:17CV6098(EAW), 2018 WL 4666068, at *4 (W.D.N.Y.
Sept. 28, 2018).

Although plaintiff fails to support her argument with a
citation to any authority, there is case law in this District
finding error when an ALJ relied on the opinion of a non-
examining source who did not have the benefit of reviewing the
entire record. <u>See, e.g.</u>, <u>Jazina v. Berryhill</u>, No.
3:16CV01470(JAM), 2017 WL 6453400, at *7 (D. Conn. Dec. 13,
2017). Here, however, there is no indication that the later
received evidence would have changed the opinions of Dr. Park or
Dr. Wurzel. As an initial matter, the records from Norwich
Orthopedic Group pre-date the relevant time period, August 31,
2014, through May 22, 2017, by over a year. <u>See</u> Tr. 997-1024
(records from Norwich Orthopedic Group dated June 14, 2012,
through May 13, 2013). With respect to the July 2, 2012,
cervical and lumbar spine MRIs contained within those records,
as previously discussed, those results were relatively benign,
and therefore unlikely to have impacted the opinions of Dr. Park
or Dr. Wurzel. Finally, although the restrictions found by Dr.
Park and Dr. Wurzel do not entirely align with those assessed by
Dr. Abella, Dr. Park and Dr. Wurzel would have not been
obligated to accept the conclusions set forth in Dr. Abella's

opinion. Rather, the Regulations dictate that the state

reviewing, non-examining physicians

> will consider the evidence in your case record and make
> administrative findings about the medical issues,
> including, but not limited to, the existence and
> severity of your impairment(s), the existence and
> severity of your symptoms, whether your impairment(s)
> meets or medically equals the requirements for any
> impairment listed in appendix 1 to this subpart, and
> your residual functional capacity.

20 C.F.R. §§404.1513a(a)(1); 416.913a(a)(1). Regardless, Dr.

Abella's November 2012 opinion essentially reaches the same

conclusion as that found by Dr. Wurzel and Dr. Park –- that

plaintiff is capable of light work. Compare Tr. 1019 (Dr. Abella

opinion limiting plaintiff to frequently lifting/carrying up to

five pounds, and occasionally lifting/carrying up to fifteen

pounds), with 20 C.F.R. §§404.1567(b), 416.967(b) ("Light work

involves lifting no more than 20 pounds at a time with frequent

lifting or carrying of objects weighing up to 10 pounds."

(emphases added)). Cf. 20 C.F.R. §§404.1567(a), 416.967(a)

("Sedentary work involves lifting no more than 10 pounds at a

time[.]" (emphasis added)). Accordingly, there is no reversible

error on that point.

Plaintiff also asserts that the ALJ was not entitled to

rely on Dr. Park and Dr. Wurzel's opinions because those

opinions were provided "before the claimant's left knee MRI

showed a meniscus tear[.]" Doc. #18-1 at 5. Plaintiff accurately

recites that Dr. Park and Dr. Wenzel's opinions, each authored
in 2015, pre-date plaintiff's left knee MRI from September 23,
2016. See Tr. 281. However, the Court is not persuaded that, had
Dr. Park or Dr. Wurzel reviewed this evidence, their opinions
would have changed. Indeed, just a few weeks after that MRI,
plaintiff reported to the emergency department with knee pain;
an examination showed that plaintiff had a "[g]ood range of
motion actively and passively[]" of the left knee with "[n]o
ligamentous instability." Tr. 596. Although the 2016 MRI
demonstrates a left meniscal tear, examinations and objective
imaging of plaintiff's left knee generally reflected mild to
moderate findings. See, e.g., Tr. 610 (January 13, 2016, MRI of
plaintiff's left knee: "Mild degenerative change."); Tr. 817
(November 1, 2016, examination: "[L]eft knee pain with
palpation, knee brace in place."); Tr. 825 (June 4, 2016,
examination: "[L]eft knee tenderness to[] palpation.").

It is also apparent from Dr. Wurzel and Dr. Park's
disability determination explanations ("DDE") that plaintiff's
complaints of left knee pain were considered. The DDE containing
Dr. Park's opinion notes that plaintiff filed disability
alleging left knee pain. See Tr. 78, Tr. 82, Tr. 86. Similarly,
the DDE containing Dr. Wurzel's opinion also notes that

plaintiff filed disability alleging left knee pain. See Tr. 108, Tr. 114.[9]

Accordingly, because Dr. Park and Dr. Wurzel limited plaintiff to light work and also limited her postural activities, the Court is not persuaded that had both Dr. Park and Dr. Wurzel reviewed the 2016 left knee MRI, that their opinions would have changed. That is particularly so in light of the examination just weeks later which noted plaintiff had a "[g]ood range of motion actively and passively[]" of the left knee with "[n]o ligamentous instability." Tr. 596.

Although Dr. Park and Dr. Wurzel did not examine plaintiff, their findings are generally consistent with the evidence of record, including the objective findings and the mild to moderate findings on physical examination, as discussed throughout this decision. As previously stated, it is well established that "the opinions even of non-examining sources may override treating sources' opinions and be given significant weight, so long as they are supported by sufficient medical evidence in the record." Correale-Englehart, 687 F. Supp. 2d at

---

[9] Dr. Wurzel further noted: "L KNEE: Ambulating independently with steady gait at 2/15, 4/15 exams. No Longitudinal L knee issues. There is insufficient evidence to support severe MDI." Tr. 119. For reasons stated, the Court is not persuaded that, had Dr. Wurzel reviewed the 2016 MRI of plaintiff's left knee, his ultimate RFC determination would have changed, given the other evidence of record.

427; see also <u>Ebert v. Berryhill</u>, No. 3:16CV1386(WIG), 2018 WL 3031852, at *5 (D. Conn. June 19, 2018) ("It is well-established that state agency medical consultants are recognized experts in evaluation of medical issues in disability claims under the Act, and that their opinions can constitute substantial evidence." (quotation marks and citation omitted)). Accordingly, the ALJ did not err in assigning great weight to the opinions of Dr. Park and Dr. Wurzel, particularly where, as here, the opinion of plaintiff's treating source conflicted with the evidence of record. See <u>Frye ex rel. A.O. v. Astrue</u>, 485 F. App'x 484, 487 (2d Cir. 2012) ("The report of a State agency medical consultant constitutes expert opinion evidence which can be given weight if supported by medical evidence in the record.").

## VI. **CONCLUSION**

For the reasons set forth herein, plaintiff's Motion for Order Reversing the Commissioner's Decision **[Doc. #18]** is **DENIED,** and defendant's Motion for an Order Affirming the Decision of the Commissioner **[Doc. #20]** is **GRANTED.**

SO ORDERED at New Haven, Connecticut, this 15th day of April, 2019.

/s/
_____
HON. SARAH A. L. MERRIAM
UNITED STATES MAGISTRATE JUDGE